UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARRY A. COHEN,

                          Plaintiff,

                                                    3:22-CV-0178
v.                                                  (GTS/ML)

ARNOT HEALTH, INC.; ARNOT OGDEN
MEDICAL CENTER, d/b/a Arnot Health; and
ELEANOR CALLANAN, individually,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF EDWARD E. KOPKO                   EDWARD E. KOPKO, ESQ.
    Counsel for Plaintiff
308 North Tioga Street, 2nd Floor
Ithaca, NY 14850

HANCOCK ESTABROOK, LLP                      ROBERT C. WHITAKER, ESQ.
    Counsel for Defendants
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this age discrimination action filed by Barry A. Cohen

("Plaintiff") against Arnot Health, Inc., Arnot Ogden Medical Center, and Eleanor Callanan

("Defendants") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621 et seq., and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L § 290 et seq.,

is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.   (Dkt. No. 29.)

For the reasons set forth below, Defendants' motion for summary judgment is granted and

Plaintiff's Complaint is dismissed.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts two claims: a claim for age discrimination in violation of the ADEA, and a claim for age discrimination in violation of the NYSHRL.   (Dkt. No. 2.)   Both of these claims are premised on allegations that Defendants failed to hire him for an advertised position as a sleep physician at their facility in Corning, New York, because of his age.   (*Id.*)   He alleges that discriminatory intent in the decision to not hire him is clearly shown by an email sent to him accidentally by Defendant Callanan regarding his application for that position, in which Defendant Callanan stated that she "[n]eed[s] help finding a reason that we don't want to consider a 66yo."   (*Id.* at ¶ 23.)

### B.   Procedural History

Plaintiff originally filed his Complaint in this action in the Supreme Court of the State of New York for Tompkins County on January 12, 2022.   (Dkt. No. 1, Attach. 1, at 4.) Defendants filed a Verified Notice of Removal to this Court on February 25, 2022, based on the Court's federal-question jurisdiction over Plaintiff's ADEA claim.   (Dkt. No. 1.)

### C.   Undisputed Material Facts on Defendants' Motion for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement

is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties." *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).   Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'" *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

The Court notes as an initial matter that Plaintiff's response to Defendants' Statement of Material Facts generally fails to comply with the requirement in Local Rule 56.1(b), which states that each fact shall be "admit[ed]" or "den[ied]," and that "[e]ach denial shall set forth a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   For example, numerous of Plaintiff's responses do not contain a denial but an insufficient statement that he lacks information regarding the asserted fact.   (Dkt. No. 30, Attach. 3, at ¶¶ 5-18, 20, 26, 29, 33, 39, 40, 43, 49, 50, 53, 54, 65-67.)   *See Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016) (summary order) (noting that a statement that one "ha[d] no recollection" of a fact "does not constitute a denial"); *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses . . . do not create genuine issues of material fact.").   Moreover, with regard to the asserted facts that Plaintiff denies, almost none of those

3

denials include a citation to supporting evidence.   (*Id.*, at ¶¶ 21, 22, 23, 45, 55, 62, 64, 69, 70.)
In the interest of deciding this matter on the merits, the Court has nonetheless considered
Plaintiff's denials to the extent it has been able to verify whether or not they are supported by
evidence in the record.

Applying this legal standard here, the following facts have been asserted and supported
by record citations by Defendants, and either expressly admitted or denied without a supporting
record citation by Plaintiff.

1.      Plaintiff is a physician who specializes in sleep medicine.

2.      On August 28, 2019, Plaintiff applied for a sleep physician job with Defendant
Arnot Ogden Medical Center ("AOMC").

3.      Plaintiff was 66 years old when he applied for that job.

4.      Plaintiff lived in Yardley, Pennsylvania when he applied for that job.

5.      Defendant AOMC's primary place of business is at 600 Roe Avenue, Elmira,
New York 14905.

6.      Jonathan Lawrence is the Chief Executive Officer of Defendant AOMC, a
position he has held since approximately July 2018.

7.      Mr. Lawrence is 62 years old, and he was 58 years old in August 2019.

8.      Defendant Eleanor Callanan worked as a recruiter for Defendant AOMC from
approximately 2006 until she retired in September 2020, and was responsible for recruiting
specialty medical providers.

9.      Defendant Callanan is 70 years old, and she was 66 years old in August 2019.

10.     Throughout her employment with Defendant AOMC, Defendant Callanan

4

recruited numerous employees over the age of 40 to work for Defendant AOMC.

11.     For example, from 2017 until her retirement in September 2020, Defendant Callanan personally screened and arranged interviews for at least 135 specialty medical providers.

12.     The ages of most of the individuals recruited by Defendant Callanan from 2017 to September 2020 are unknown, because a candidate's age is not asked during the recruiting process.   However, age data is available for 53 of the medical providers recruited by Defendant Callanan during that time period.

13.     A total of 38 out of those 53 medical providers recruited by Defendant Callanan from 2017 through September 2020 were offered employment by AOMC.

14.     A total of 20 of those 38 providers were over the age of 40 years, with 13 of those 20 being over the age of 50 years, and six being over the age of 60 years, including two individuals who were 71 years old. In total, eight of the candidates that Defendant Callanan recruited between 2017 and September 2020 were 60 years or older and six of those eight were eventually hired by Defendant AOMC.

15.     Between August 2018 and January 2019, Defendant Callanan presented five candidates for the position of Chief Cardiology to Defendant AOMC who were aged 47, 51, 52, 63, and 71 when screened; from this group, Defendant AOMC hired the 71-year-old candidate.

16.     Between July 2017 and June 2018, Defendant Callanan presented five candidates for the position of Non-Invasive Cardiology to Defendant AOMC who were aged 37, 47, 55, 56, and 61 when screened; from this group, Defendant AOMC hired the 61-year-old and 47-year-old candidates.

17.     On September 25, 2019, Defendant Callanan inadvertently sent an email to Plaintiff that stated the following: "Hey, can you please review this CV and give me a call? Need help finding a reason that we don't want to consider a 66yo.   I thought that we required fellowship training?   This physician took a 120-hour sleep course in 2004 and passed the ABSM certification test."

18.     Defendant Callanan meant to send the September 25, 2019, email to the Director of Medical Services, Elizabeth Monroe, instead of Plaintiff.

19.     Defendant Callanan testified that her intent in sending that email was to determine whether Plaintiff was qualified for the position because he was not fellowship-trained through a GME accredited program.[1]

20.     Defendant Callanan admitted that she worded that email poorly, but testified that she did not mean to suggest Plaintiff should not be considered because of his age.[2]

21.     Defendant Callanan presumed Plaintiff's age because she noticed on Plaintiff's resume that he had graduated college the same year that she had, and she believed there were not any GME accredited sleep fellowships in existence at that time.   Thus, it was unclear to her how Plaintiff could be properly certified as a sleep physician.[3]

22.     Plaintiff emailed Mr. Lawrence on October 23, 2019, and informed him of Defendant Callanan's email, stating in part that "it seems I am a victim of age discrimination."

---

[1]     Plaintiff denies this fact, but fails to provide a citation to any evidence to support that denial as required by Local Rule 56.1.   (Dkt. No. 30, Attach. 3, at ¶ 21.)   Because the Court has also been unable to independently locate any evidence to support a valid denial, this fact is therefore deemed to be admitted.

[2]     This asserted fact is deemed to be admitted for the reasons discussed in Note 1.

[3]     This asserted fact is deemed to be admitted for the reasons discussed in Note 1.

23.     Mr. Lawrence had been out of the country on vacation, but promptly replied to Plaintiff after he returned on October 28, 2019.

24.     Mr. Lawrence's email of October 28, 2019, stated in part as follows: "I apologize for my delayed response, as I was out of the country when your initial email arrived.   Thank you for your follow up and sharing this information with me.   Arnot has a long history of hiring qualified physicians of all ages and does not discriminate on this basis.   We do not tolerate any form of discrimination at Arnot, whether based on age or any other characteristic.   Please be assured that we are addressing your concerns with the employee who sent the email, and your application will be considered solely on its merits.   Meanwhile, we would like to schedule an interview so that we may further evaluate your credentials and experience.   You have my assurance that Ms. Callanan will have no involvement whatsoever in your interview or the decision-making process related to your application.   I am copying Karthika Surendran on this email so that she can coordinate with you to schedule an interview if you are still interested.   We appreciate your interest in Arnot and look forward to meeting with you."

25.     When Mr. Lawrence sent Plaintiff this email, Plaintiff had not filed a claim with any federal or state agency against Defendants alleging discrimination.

26.     Ms. Surendran was a recruiter for Defendant AOMC throughout the 2019 calendar year and was responsible for recruiting medical specialty providers.

27.     Ms. Surendran emailed Plaintiff within hours of Mr. Lawrence's email to Plaintiff, inviting Plaintiff for an interview and asking him for additional information including dates he was available to interview.

28.     On October 30, 2019, Plaintiff replied to Ms. Surendran's email stating that he

was available to interview on November 26, or December 3, 2019.

29.     Plaintiff subsequently provided information requested by Ms. Surendran, and they exchanged several emails.

30.     Plaintiff accepted Mr. Lawrence's offer to be interviewed.

31.     Defendant AOMC's location is approximately a four- or four-and-a-half-hour drive from Plaintiff's home.[4]

32.     On November 18, 2019, Ms. Surendran sent Plaintiff an interview itinerary scheduling his interview for December 3, 2019, as requested by Plaintiff.

33.     The interview itinerary given to Plaintiff stated that he would interview with CEO Mr. Lawrence, Chief Medical Officer Dr. Kenneth Herzl-Betz, sleep medicine physician Dr. Mark Ivanick, Director of Operations Floyd Metzger, and Director of Employee Relations Heather Krauss.[5]

34.     Defendant Callanan was not part of the interview process nor listed on the itinerary.

35.     On November 20, 2019, Ms. Surendran emailed Plaintiff, stating the following:

---

[4]     Plaintiff denied the asserted fact to the extent it states that the interview location is a four-hour drive from his home, citing to his own deposition testimony that it is in fact a four-and-a-half-hour drive.   (Dkt. No. 30, Attach. 3, at ¶ 34.)   Because both estimates are supported by portions of the record, and because the half-hour difference in question is of little if any materiality under the circumstances, the Court has amended the asserted fact to reflect the evidence presented.

[5]     Plaintiff admits this asserted fact but adds additional unrelated immaterial facts.   *See LaFever v. Clarke*, 525 F. Supp. 3d 305, 326 (N.D.N.Y. 2021) (Hurd, J.) (noting that a response to the movant's Statement of Material Facts is not the proper place to add additional facts); *Boger v. New York State Office of Parks, Recreation & Historic Preservation*, 17-CV-0289, 2019 WL 2766897, at *2 (N.D.N.Y. July 2, 2019) (D'Agostino, J.) (disregarding the party's introduction of immaterial facts and legal argument when responding to asserted facts).   This fact is therefore deemed to be admitted.

"Good Morning Dr. Cohen, Dr. Mark Ivanick–our Sleep Medicine physician would like to speak with you regarding the position.   He is available on Friday, 11/22 to talk.   I would appreciate if you could please provide me your availability for Friday for a phone call."[6]

36.     Dr. Ivanick was the Director of Defendant AOMC's sleep medicine practice group when the interview itinerary was sent to Plaintiff and the only physician at Defendant AOMC who practiced sleep medicine in 2019.[7]

37.     Ms. Surendran scheduled a call between Plaintiff and Dr. Ivanick so he could talk with Plaintiff about the open position and answer questions he might have about Defendant AOMC or the position before the interview.

38.     Plaintiff replied to Ms. Surendran's email of November 20, 2019, by stating that the proposed date did not work for him and asking to schedule the call with Dr. Ivanick on Monday or Tuesday of the following week.

39.     Ms. Surendran and Dr. Ivanick accommodated Plaintiff's request and scheduled a call for November 26, 2019, at 1:00 P.M.

40.     Ms. Surendran sent Plaintiff a calendar invitation for the scheduled call with Dr. Ivanick.

41.     Plaintiff has applied for employment with Defendant AOMC only once, and the interview itinerary he received on November 18, 2019, is the only itinerary he has ever received from Defendant AOMC.

42.     Plaintiff did not ask Ms. Surendran or anyone else at Defendant AOMC why there

---

[6]     This fact is deemed to be admitted for the reasons discussed above in Note 5.

[7]     This fact is deemed to be admitted for the reasons discussed above in Note 5.

was no lunch or dinner scheduled on the itinerary.[8]

43.    Plaintiff did not ask Ms. Surendran or anyone else at Defendant AOMC whether his travel expenses would be reimbursed.[9]

44.    Plaintiff did not ask whether he could have a tour of the local community after his interview.[10]

45.    It was not Ms. Surendran's normal practice to include a meal or community tour on an interview itinerary unless it was requested by the candidate.

46.    Ms. Surendran has given interview itineraries to dozens of physicians seeking jobs with Defendant AOMC that do not include meals or community tours.

47.    Plaintiff is unaware of any information that would indicate that Dr. Herzl-Betz, Dr. Ivanick, Mr. Metzger, or Ms. Krauss harbor any age-based discriminatory animus.

48.    Plaintiff did not know any of the physicians who worked for Defendant AOMC when he applied to work there.

49.    Mr. Lawrence's offer to interview Plaintiff and his guarantee that Plaintiff would be fully and fairly considered for the sleep physician position without regard to his age was sincere and made in good faith.

50.    Mr. Lawrence intentionally removed Defendant Callanan from Plaintiff's recruiting process to address Plaintiff's concerns and to help reassure Plaintiff that he would be objectively considered for the sleep physician job without regard to his age or any other improper consideration.

---

[8]    This fact is deemed to be admitted for the reasons discussed above in Note 5.

[9]    This fact is deemed to be admitted for the reasons discussed above in Note 5.

[10]    This fact is deemed to be admitted for the reasons discussed above in Note 5.

51.    If Plaintiff had come to his interview, he would have been objectively considered for the position like any other candidate by the interview committee after a review of his qualifications and quality of interview.[11]

52.    Plaintiff does not know whether Mr. Lawrence's offer to interview him was sincere.

53.    Plaintiff has never spoken with Mr. Lawrence, other than when forwarding Defendant Callanan's email.

54.    Plaintiff has no knowledge of any statements made by Mr. Lawrence to indicate he harbors any discriminatory animus against Plaintiff based on Plaintiff's age.

55.    On November 26, 2019, at 10:45 A.M., Plaintiff emailed Ms. Surendran to cancel his scheduled interview with Defendant AOMC, stating, "I think I wish to cancel the interview. I was very interested in August, but now I have a better job offer."[12]

56.    Plaintiff withdrew himself from further consideration of employment with Defendant AOMC as a result of this email.[13]

57.    Plaintiff was unaware of who the leaders of Defendant AOMC's sleep and respiratory programs were in 2019.

58.    Plaintiff cancelled his interview with Defendant AOMC and withdrew himself from further consideration because he had a solid job offer from another employer.[14]

59.    Plaintiff has not tried to reapply for employment with Defendant AOMC since

---

[11]    This fact is deemed to be admitted for the reasons discussed above in Note 1.

[12]    This fact is deemed to be admitted for the reasons discussed above in Note 1.

[13]    This fact is deemed to be admitted for the reasons discussed above in Note 5.

[14]    This fact is deemed to be admitted for the reasons discussed above in Notes 1 and 5.

withdrawing his application on November 26, 2019.

60.    Plaintiff testified that he believes it is "highly likely" that Defendant AOMC would have hired him if he had attended his scheduled interview with Defendant AOMC.[15]

61.    When Plaintiff withdrew himself from consideration for the sleep physician job, Defendant AOMC had not hired anyone for the position, and it had remained vacant.

62.    Defendant AOMC never hired a full-time sleep physician after Plaintiff withdrew his application.   Instead, in November 2020, Defendant AOMC hired a Pain Medicine Physician who does sleep medicine on a part-time basis.

63.    Mr. Lawrence appointed Ms. Surendran to replace Defendant Callanan as Plaintiff's recruiter.

64.    Ms. Surendran did not say anything to Plaintiff to indicate that she harbors any age-based discriminatory intent.

65.    Plaintiff believes that, despite Mr. Lawrence's intervention and interview offer, Defendants did not really want to interview him.[16]

66.    Plaintiff is unaware of any information to indicate that Defendant Callanan harbors discriminatory animus based on Plaintiff's age other than the email from September 25, 2022.[17]

D.    **Parties' Arguments on Defendants' Motion for Summary Judgment**

1.    **Defendants' Memorandum of Law**

Generally, in their motion for summary judgment, Defendants make four arguments.

---

[15]    This fact is deemed to be admitted for the reasons discussed above in Notes 1 and 5.

[16]    This fact is deemed to be admitted for the reasons discussed above in Notes 1 and 5.

[17]    This fact is deemed to be admitted for the reasons discussed above in Note 1.

(Dkt. No. 29, Attach. 2.)    First, Defendants argue that Plaintiff cannot establish a prima facie case of age discrimination under either the ADEA or the NYSHRL because he cannot show that he suffered an adverse action.    (*Id.* at 12-13.)    Specifically, they argue that Plaintiff was not denied employment because it is undisputed that he voluntarily withdrew himself from consideration for the relevant job after being offered an interview, and there is no evidence to suggest that the interview offer was not made in good faith.    (*Id.*)

Second, Defendants argue that, even if Plaintiff was denied employment, any such denial did not occur under circumstances that give rise to an inference of discrimination.    (*Id.* at 14.) Specifically, they argue that, despite the statement in Defendant Callanan's email, it is undisputed that she was removed from any part of the interview process once Defendants learned what she had said, and there has been no evidence presented to show that any of the other individuals involved in the interview process harbored any discriminatory animus.    (*Id.*)

Third, Defendants argue that, even if Plaintiff could satisfy the above two requirements, he has still not shown that age discrimination was the but-for cause of any refusal to hire him. (*Id.* at 14-17.)    Specifically, Defendants argue that Plaintiff's theory of discrimination is based on a single remark in Defendant Callanan's email, but he ignores that Defendant Callanan was removed from the process as soon as Defendants became aware of her remark, that Defendant Callanan was in any case not a decisionmaker regarding hiring, and that Defendant Callanan and others involved in the hiring process are also within the same protected age class as Plaintiff. (*Id.*)

Fourth, Defendants argue that Plaintiff cannot show liability against Defendant Callanan as an individual because (a) the ADEA does not provide for individual liability, and (b) while the

NYSHRL does allow for individual liability, a finding that an individual is liable as an aider or abettor of discrimination requires a finding that the relevant primary actor is liable and Plaintiff cannot show such liability against the employer Defendants as was already discussed.   (*Id.* at 17-19.)   Defendants also argue that, even if factual and legal issues remain regarding Plaintiff's NYSHRL claim after the ADEA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over that state law claim.   (*Id.*)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff makes three arguments.   (Dkt. No. 30.)   First, Plaintiff argues that he has established a prima facie case of age discrimination.   (*Id.* at 20-25.)   Specifically, Plaintiff argues as follows: (a) he was within the protected age group given the fact that he was 66 at the date of the alleged adverse action; (b) he was qualified for the position for which he was applying; (c) he was subjected to an adverse action despite the fact that he withdrew himself from consideration before the interview because there was "such a pervasive atmosphere of discrimination that continued participation in the hiring process would be futile" as shown by Defendant Callanan's email and the inadequate content of the interview itinerary Defendants sent him, which Plaintiff construed as a sign the interview was merely a formality and Defendants had no real intention to hire him; (d) this action occurred under circumstances giving rise to an inference of discrimination, namely Defendant Callanan's email; and (e) his age was the but-for cause of the adverse action because, although Defendants have alluded to the fact he lacked a required fellowship, such objection was not raised when Defendants agreed to schedule an interview with him, and evidence regarding the types of itineraries that Defendants provided for other physician interviews shows that his

interview was not the type Defendants would have offered if they had any real intent to hire him. (*Id.*)

Second, Plaintiff argues that Defendants' justifications for their actions are a pretext for age-based discrimination because, again, although Defendant Callanan initially attempted to use the lack of a certain credential as a justification for failing to hire him, Defendants never again raised that lack of credential as an issue when choosing to offer him an interview; Plaintiff argues that the subsequent steps of assigning a new recruiter and scheduling an interview were merely a sham to cover up discrimination, as evidenced by their failure to again raise the lack of credentials.   (*Id.* at 25-28.)

Third, Plaintiff argues that his claim under the NYSHRL survives because (a) he has shown liability by Defendants Arnot Health and AOMC related to an aider-abettor theory as to Defendant Callanan, and (b) he has also sufficiently shown liability against Defendant Callanan as an individual under NYSHRL Section 296(6).   (*Id.* at 28-29.)

### 3.   Defendants' Reply Memorandum of Law

Generally, in their reply to Plaintiff's opposition, Defendants make four arguments. (Dkt. No. 31.)   First, Defendants argue that Plaintiff did not suffer an adverse employment action because, even if he did believe that continuing with the interview process was a futile endeavor, he never expressed any such sentiment to Defendants and, more importantly, there is no evidence of any discriminatory animus related to any of the persons involved in the hiring process other than Defendant Callanan, who did not play any "key role" in the decision-making process regarding interviewing and hiring Plaintiff given that she was removed from his application as soon as Mr. Lawrence learned of the remark in her email.   (*Id.* at 7-9.)   Further,

Plaintiff's itinerary was prepared by Ms. Surendran, not Defendant Callanan, and so previous itineraries prepared by Defendant Callanan related to interviews for other physicians offer little insight into how Defendants treated his interview, nor was Plaintiff aware of those other itineraries when he chose to withdraw his application and thus they could not have factored into his belief that proceeding with the interview would be futile.   (*Id.*)

Second, Defendants argue that Plaintiff has not sufficiently shown discriminatory intent for reasons already argued regarding Defendant Callanan's email and the differing itineraries she and Ms. Surendran prepared for physicians, as well as the undisputed fact that the sleep physician position was not filled until nearly a year later and the evidence that Ms. Callanan and the employer Defendants routinely hired individuals within the protected age category.   (*Id.* at 10-11.)

Third, Defendants argue that the EEOC determination related to Plaintiff's claims should not be afforded any weight in this action, because that agency did not consider all of the relevant evidence and did not provide specific explanations for their findings.   (*Id.* at 11-12.)

Fourth, Defendants argue that the claims against Defendant Callanan must be dismissed, because Plaintiff has not shown that the employer Defendants are liable for any age discrimination against Plaintiff, and because they did not condone or permit any discrimination by Defendant Callanan.   (*Id.* at 12-13.)

## II.    LEGAL STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[18]   As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ. P. 56(a), (c), (e).[19]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

---

[18]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[19]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.   N.D.N.Y. L. R. 7.1(a)(3).

the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).   What the non-movant's failure to respond to the motion does is

lighten the movant's burden.

        For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement.[20]

        Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(a)(3).[21]   Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

---

[20]      Among other things, Local Rule 56.1(b) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching numbered paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

[21]      *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*,
02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming
plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a
concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at \*1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at \*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

### A.   Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim Pursuant to the ADEA

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.   *See, supra* Parts I.D.1 and 3.   To those reasons, the Court adds the following analysis.

Discrimination claims brought pursuant to the ADEA, like those brought under many of the other federal anti-discrimination statutes, are analyzed using the *McDonnell Douglas* burden-shifting framework.   *Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023).   "Under this familiar framework, 'once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions against the employee.   If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination.'"   *Carr*, 76 F.4th at 177 (quoting *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86-87 [2d Cir. 2022]).   "The plaintiff bears 'the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination.'"   *Carr*, 76 F.4th at 177 (quoting *Tex. Dep't of Cmty. Affs. V. Burdine*, 450 U.S. 248, 256 [1981]).   Further, the plaintiff must show that his age was the but-for cause of the employer's adverse action, not merely that it was a

motivating factor.   *Williams v. PMA Cos., Inc.*, 564 F. Supp. 3d 32, 45 (N.D.N.Y. 2021)

(Suddaby, C.J.) (citing *Lively v. WAFRA Investment Advisory Gr., Inc.*, 6 F.4th 293, 303 [2d Cir.

2021]).

To establish a prima facie case of discrimination under the ADEA, a plaintiff must show

"(1) that she was within the protected group (more than forty years old); (2) that she was

qualified for the position; (3) that she experienced adverse employment action; and (4) that such

action occurred under circumstances giving rise to an inference of discrimination."   *Brown v.*

*UPS United Parcel Serv., Inc.*, 22-CV-0762, 2023 WL 3322702, at *8 (N.D.N.Y. Mar. 28, 2023)

(Dancks, M.J.) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 [2d Cir. 2010]),

report-recommendation adopted by 2023 WL 3032195 (N.D.N.Y. Apr. 21, 2023) (Sannes, C.J.).

In their motion, Defendants do not appear to challenge the first two of these factors.   It is

undisputed that Plaintiff's age (66 at the time of the alleged adverse action) places him within the

protected age group.   Regarding whether he is qualified for the position he sought, although

Defendant Callanan raised questions about whether Plaintiff was qualified for the sleep physician

position in her email based on a perceived lack of fellowship training, Defendants have not

argued that Plaintiff's credentials render him unqualified for the advertised position.   As a

result, it is the last two factors that are at issue here.

### 1.   Adverse Employment Action

The ADEA explicitly recognizes that "[i]t shall be unlawful for an employer . . . to fail or

refuse to hire . . . any individual" because of that individual's age.   29 U.S.C. § 623(a).   The

failure to hire an individual based on age discrimination is therefore clearly an adverse action

contemplated by the statute.   Defendants do not appear to challenge that notion, but rather argue

that there was no refusal to hire because the undisputed evidence substantiates that Plaintiff voluntarily withdrew himself from consideration for the relevant position after he had been offered an interview.   Plaintiff counters that argument by asserting his voluntary withdrawal should still be considered an adverse action because the circumstances of the interview process show that there was "such a pervasive atmosphere of discrimination that continued participation in the hiring process would be futile."   (Dkt. No. 30, at 22.)

"Where 'the adverse action upon which plaintiff seeks to rely is his own decision to withdraw, not anything the Defendants said or did,' that plaintiff has failed to meet his *prima facie* burden." *Keshinover v. New York State Off. of Parks, Recreation and Historic Preservation*, 17-CV-4349, 2019 WL 5212235, at *9 (S.D.N.Y. Oct. 15, 2019).   However, the Second Circuit has recognized that, in an analogous type of situation, "a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." *Malarkey v. Texaco, Inc.*, 983 F.3d 1204, 1213 (2d Cir. 1993) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364-65 [1977]).   In such an analogous situation, "[a] nonapplicant plaintiff claiming futility bears the 'not always easy burden of proving that she would have applied for the job had it not been for those discriminatory practices." *Thelwell v. City of New York*, 13-CV-1260, 2015 WL 4545881, at *16 (S.D.N.Y. July 28, 2015), aff'd 733 Fed. App'x 561, 563-64 [2d Cir. 2018]) (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 367-68) (alterations omitted).

In this case, Plaintiff cites two reasons that he allegedly believed that it would have been futile to proceed with the offered interview: (1) the statement made by Defendant Callanan in the email from September 25, 2019, was clear evidence of discrimination; and (2) the interview

itinerary provided to Plaintiff shows that Mr. Lawrence's offer to interview was merely a cover-up for discrimination because it is not the type of itinerary that would be provided to a candidate Defendants were serious about hiring.   (Dkt. No. 30, at 21-22.)   Plaintiff's argument essentially boils down to an assumption that, because Defendant Callanan's email arguably provides concrete evidence of discriminatory intent, the whole interview process was tainted from that moment forward.

This assumption, however, ignores key undisputed facts, including that (1) Defendant Callanan was removed from the team working on Plaintiff's application immediately after Mr. Lawrence was informed of what she had written in the email of September 25, 2019, and had no further role in the hiring process related to Plaintiff, and (2) Plaintiff was offered an interview, which included in-person meetings with CEO Mr. Lawrence, Chief Medical Officer Dr. Herzl-Betz, sleep medicine physician Dr. Ivanick, Director of Operations Mr. Metzger, and Director of Employee Relations Ms. Krauss, as well as a pre-interview phone call with Dr. Ivanick to discuss the position and answer any questions Plaintiff might have.[22]   Because it is undisputed that Defendant Callanan was removed from the process entirely and replaced by Ms. Surendran, in order to establish that continuing with the interview would have been futile, Plaintiff must show that there was some reasonable reason to believe that the persons who were involved in the interview process shared Defendant Callanan's discriminatory intent.   Yet Plaintiff has adduced no such evidence here.   Indeed, he has admitted that he has no knowledge or reason to believe that Ms. Surendran, Mr. Lawrence, Dr. Herzl-Betz, Dr. Ivanick, Mr.

---

[22]   Of lesser (but nonetheless significant) materiality to this issue of adverse action include the undisputed facts that (1) the immediate response provided by Mr. Lawrence to Plaintiff (after Mr. Lawrence returned to the country from vacation) included an assertion that Arnot does not tolerate discrimination against applicants based on age, and an assurance that Plaintiff's application would be considered solely on its merits, and (2) Arnot promptly rescheduled a

Metzger, or Ms. Krauss harbored any age-related discriminatory animus.   (Dkt. No. 30, Attach. 1, at 195-96, 211-12.)   Under the circumstances, and based on the current record, the fact that Defendant Callanan (who herself was 66 years old during the time in question) expressed signs of discriminatory animus at an early stage in the application process is not sufficient to allow a reasonable factfinder to impute such animus onto other individuals within Defendants' organization, particularly where, as here, Defendants, through Mr. Lawrence, took affirmative steps to ensure that Defendant Callanan would not be involved in the remainder of Plaintiff's application process.

The only reason not involving Defendant Callanan's email that Plaintiff asserts to explain why he believed continuing with the interview process would be futile is his perception of the itinerary that was provided to him as being so deficient that it signaled to him that Defendants were not serious about hiring him.   As an initial matter, the Court observes that the Second Circuit has recognized that "feelings and perceptions of being discriminated against are not evidence of discrimination."   *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999).   As a result, the fact that the interview itinerary did not look like what Plaintiff was used to when applying for physician positions at other organizations does not automatically make that itinerary suspect: different employers have different employment-recruitment practices, and it is not the role of the courts to pass judgment on those practices, so long as they are within the bounds of the law.

Nor do the itineraries related to other physicians who have interviewed with Defendants automatically suggest that the fact that Plaintiff was not offered meals, travel accommodations, or an interview that was longer or of a different format is evidence that Defendants had no

_____

pre-interview telephone call with Plaintiff at Plaintiff's request.

intention of fairly considering him for the position.   As Defendants argue, the itineraries relied upon by Plaintiff in support of his argument were mostly prepared by Defendant Callanan; yet it is undisputed that Plaintiff's itinerary was prepared instead by Ms. Surendran.   Given that there has been no evidence presented that Defendants have a policy that mandates how employees in the position of Defendant Callanan and Ms. Surendran prepare interview itineraries (i.e., whether they are required to structure interviews in a certain way, or offer meals or travel accommodations before the candidate requests them), there is nothing in the record to suggest that Ms. Surendran's undisputed policy of not offering things such as meals, travel reimbursement, or community tours unless the candidate asks for them and/or at the time the candidate arrives for the interview is indicative of discriminatory animus.   Indeed, Defendants have offered examples of itineraries that were prepared by Ms. Surendran in 2019 and 2020 that are quite similar to the one that was provided to Plaintiff, including thirty-minute interviews occurring over approximately three or four hours (although some were longer days or multiple days, depending on the type of position), interviews with multiple people at once rather than individual interviews, and the absence of any mention of meals, travel accommodations/reimbursement, or community tours.   (Dkt. No. 29, Attach. 6.)   Simply stated, the fact that Defendant Callanan followed different practices when making itineraries does not lead to an inference that Plaintiff's itinerary as prepared by Ms. Surendran suggests Defendants had no intention of hiring him.

Further, Plaintiff has not offered any evidence to counter or undermine Ms. Surendran's statements that normally she would add meals and community tours if those were requested by the candidate, and that she would not include travel reimbursement on the itinerary but instead

preferred to discuss that when the candidate had arrived for the interview.   (Dkt. No. 29, Attach. 5, at ¶¶ 10-12.)   Indeed, Plaintiff acknowledges that he never asked Ms. Surendran about any of those things when he noticed they were absent from his itinerary, and states only that he made a comment in an email that he would drive the afternoon before the interview and be available for dinner with relevant persons if desired, to which Ms. Surendran stated she would check the team's availability for the dates suggested and get back to him.   (Dkt. No. 30, Attach. 1, at 206-08, 231-32; Dkt. No. 29, Attach. 7, at 6.)

Moreover, regarding futility, Plaintiff himself testified at his deposition that he believed it was "highly likely" he would have been hired had he proceeded with the offered interview, a statement that is at odds with his assertion that he withdrew his application because he felt the interview was just a sham proceeding to protect Defendants against liability for Defendant Callanan's remark.   (Dkt. No. 30, Attach. 1, at 218-19; Dkt. No. 30, Attach. 2, at ¶¶ 38-39.) *See Keshinover*, 2019 WL 5214435, at *10 ("Plaintiff cannot argue that he would have been hired but for his withdrawal, yet also argue that he withdrew because he was certain he would not be hired.").   The fact that Plaintiff believes that there was a strong probability he would have been offered the job had he proceeded with the interview undermines his assertion that doing so would have been futile.

Regarding the EEOC determination, the Court acknowledges that its finding is at odds with the findings of that agency.   However, although an agency's interpretation of its own rules or statutes are entitled to substantial deference, determinations regarding the ultimate merits of a claim are subject to review, and "district courts have substantial discretion with respect to the weight to be accorded an EEOC determination."   *Woodell v. United Way of Dutchess Cnty*, 357

F. Supp. 2d 761, 772 (S.D.N.Y. 2005) (citing *Weise v. Syracuse Univ.*, 522 F.2d 397, 413 [2d

Cir. 1975]; *Greenberg v. N.Y. City Trans. Auth.*, 336 F. Supp. 2d 225, 241-42 [S.D.N.Y. 2004]).

Here, in its determination, the EEOC based its finding that Defendant took an adverse action

against Plaintiff on its perception that Defendant Callanan's actions (i.e., sending the email of

September 25, 2019) "remove[d] him from consideration for the Sleep Physician position," and

that subsequent remedial actions "do not change the fact that [Defendants], acting through

Callahan, had already taken an adverse action against [Plaintiff]."   (Dkt. No. 30, Attach. 1, at

131-32.)

  Respectfully, the Court disagrees.   The EEOC's reasoning *might* conceivably be more

persuasive if Defendant Callanan could be held personally liable for the alleged discrimination.

However, the ADEA does not provide for personal liability against individual defendants.   *See*

*Amrod v. YouGov*, 23-CV-1104, 2023 WL 8432314, at *3 (N.D.N.Y. Dec. 5, 2023) (D'Agostino,

J.) (citing *Guerra v. Jones*, 421 F. App'x 15, 17 [2d Cir. 2011]).   As a result, even if Defendant

Callanan intended to unilaterally exclude Plaintiff from consideration based on his age (a

proposition that appears to be in dispute, given that her email can reasonably be interpreted in an

innocent, although inarticulate, way), such fact does not automatically give rise to any liability;

there still must be some showing that the employer Defendants are responsible for, or approved

of, her conduct in order to subject them to liability for that conduct.   Here, the evidence does not

support such a finding.

  More specifically, there is no admissible record evidence to support a reasonable finding

that Defendant Callanan's email, which was intended to be sent to another employee for the

purpose of determining why Plaintiff's credentials were insufficient to qualify him for the

position (whether or not she also harbored any discriminatory animus based on his age), represents a *final* decision by Defendants not to hire or consider Plaintiff for the relevant position.   (*See* Dkt. No. 30, Attach. 1, at 285-87 [attaching Defendant Challanan's deposition transcript, in which she explains the purpose of the email was to ask for help determining whether the training on Plaintiff's CV met the criteria for the posted position].)   Indeed, the evidence substantiates that Plaintiff was *not* removed from consideration, because, within a few business days of Plaintiff emailing Mr. Lawrence regarding Defendant Callanan's email,[23] Mr. Lawrence offered Plaintiff an interview for the position.   (Dkt. No. 29, Attach. 4, at 2-3.) Therefore, and as will be discussed in more detail in the next section related to whether Plaintiff has shown an inference of discriminatory intent, the evidence presented shows that the employer Defendants took prompt steps to disavow and remediate the alleged discriminatory email by Defendant Callanan.   As a result, Defendant Callanan's act of sending the email to Plaintiff (or to anyone else) does not constitute an adverse action that can be imputed to the employer Defendants for the purposes of the ADEA.

In summary, for the above-stated reasons, Plaintiff has not pointed to any admissible record evidence from which a reasonable factfinder could conclude that his withdrawal of himself from consideration before his offered interview could be considered an adverse action because continuing with the interview process would have been futile.   *See Gallegos v. Tompkins Consolidated Area Transit, Inc.*, 15-CV-0613, 2018 WL 3432709, at *2 (N.D.N.Y. July 16, 2018) (Sharpe, J.) (granting summary judgment to the defendant where the plaintiff voluntarily withdrew his application for the relevant promotion during the interview process,

---

[23]     The Court notes that nearly a month elapsed between the time Defendant Callanan inadvertently sent Plaintiff the email and when Plaintiff emailed Mr. Lawrence.   (Dkt. No. 29, Attach. 4, at 3-6.)

finding that proffered belief based on experience at his first interview that the defendant had no intention of promoting him was little more than speculation); *Thelwell*, 2015 WL 4545881, at *16 (finding plaintiff had failed to establish prima facie case based on a claim for failure to promote where, although the plaintiff alleged applying would be futile, the evidence showed that plaintiff was "explicitly invited to apply" and the sole alleged discriminatory actor had only a "minor role" in the application process).

**2.      Circumstances Giving Rise to an Inference of Discrimination**

Although the Court has already found that Plaintiff has not shown that he suffered an adverse action, it finds in the alternative that he also has not shown that the alleged failure to hire him occurred under circumstances giving rise to an inference of discrimination.   Although a plaintiff can raise an inference of age discrimination by showing that he or she was treated less favorably than similarly situated younger employees, Plaintiff has not made any such showing in this case.  *Williams*, 564 F. Supp. 3d at 50.   For example, there is no admissible record evidence suggesting that Defendants hired a younger sleep physician; to the contrary, it is undisputed that they did not hire anyone to fill that position, but instead hired a pain medicine physician who did part-time work in sleep medicine nearly a year later.   (Dkt. No. 29, Attach. 5, at ¶ 17.) Furthermore, Defendants have presented uncontroverted evidence showing that not only were at least two of the individuals involved in the underlying events (namely, Defendant Callanan and Mr. Lawrence) in the same protected age group as Plaintiff, but also that Defendants have a documented history of offering positions to and hiring physicians within that protected age group, some of whom were older than Plaintiff at the time they were offered a position or hired. (Dkt. No. 29, Attach. 8, at ¶¶ 5-8; Dkt. No. 29, Attach. 9.)   Such evidence weighs against a

finding that there was an inference of age-related discrimination in this case.   *See Gray v. AES Greenidge, LLC*, 100 F. App'x 884, 846 (2d Cir. 2004) (finding conclusory assertions that the employer routinely passed over older applicants were insufficient to create an issue of fact, particularly given evidence was presented to show that, between 1999 and 2001, half of its new hires at the same plant where plaintiff had applied to work were over 40 years old); *see also Young v. Daughters of Jacob Nursing Home*, 09-CV-7475, 2011 WL 2714208, at *6 (S.D.N.Y. July 12, 2011) (noting that evidence of a diverse workforce in terms of age can undermine "the suggestion that discrimination was at work" as long as it is not outweighed by other evidence).

Instead, Plaintiff relies upon Defendant Callanan's comment in the email of September 25, 2019, the nature of the interview itinerary, and the fact that Defendants never questioned whether his credentials were sufficient to qualify him for the position (despite those credentials being one of the reasons Defendant Callanan initially offered for wanting to exclude him from consideration) as "evidence" permitting an inference of discrimination.

However, although it is certainly true that Defendant Callanan's remark in the email of September 25, 2019, reasonably suggests that she may have harbored age-related animus toward Plaintiff (despite her sharing the same age as Plaintiff, the remark's mere existence does not suffice to raise a reasonable inference that any ultimate failure to hire Plaintiff was based on such discrimination.   Indeed, "stray age-related remarks are insufficient to raise an inference of discriminatory motive unless they (1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision."   *Lively*, 6 F.4th at 306 (internal quotation marks omitted).   Defendant Callanan's statement fails to meet this standard because

29

she was not a supervisor who played a substantial role in any alleged decision not to hire

Plaintiff; it is undisputed that she was removed from the entire process by the time Plaintiff was

offered an interview by Mr. Lawrence.   Because there is also no evidence to suggest, let alone

show, that her statement was the opinion of any of the other individuals who were ultimately to

be involved in Plaintiff's interview process, that statement, under the circumstances, does not

raise a reasonable inference of discrimination as to the alleged refusal to hire.   *See Williams*, 564

F. Supp. 3d at 50-51 (finding allegations of being treated differently related to remote work

request were immaterial to age discrimination claim because denial of an ability to work

remotely is not an adverse action and "it must be the *adverse employment action* that 'occurred

under circumstances giving rise to an inference of discrimination'").

      As was already discussed above, nor does the nature of the itinerary provided to Plaintiff

give rise to an inference of age discrimination.   It is not apparent what the ages of the other

physicians who were provided the itineraries presented as evidence by both Plaintiff and

Defendants were; but the itineraries that were prepared by Ms. Surendran do not in any case

suggest that Plaintiff's interview was significantly different from those of other physicians who

were interviewing for similar types of specialist positions.   Again, Plaintiff's belief that the

itinerary is not what an employer would offer to a candidate it truly wishes to hire is purely

subjective speculation and cannot serve to raise an inference of discrimination.   Further, the fact

that there is no evidence that the physicians who received the other itineraries for other positions

are not also within the protected age group undermines the value of such evidence for the

purpose of showing that any alleged failure to hire Plaintiff was motivated by age discrimination

specifically.

Plaintiff also cites the fact that Defendant Callanan initially expressed concern regarding whether Plaintiff had the relevant qualifications for the sleep physician position because he appeared to lack a required fellowship, and the fact that such a concern was never raised again during the interview process after he brought Defendant Callanan's email of September 25, 2019, to Defendants' attention.   (Dkt. No. 30, at 24-25.)   However, he does not explain *why* this fact raises a reasonable inference of discrimination, except to the suggest that it proves the interview offer was a sham because Defendants would not offer an interview to a candidate who does not meet their qualifications.   Furthermore, as with his conflicting statements regarding whether continuing with the interview process would be futile, Plaintiff makes conflicting arguments on this point: he asserts that Defendants would not have offered him an interview except as a means to cover up discrimination because they had already deemed him to be unqualified, while also acknowledging that he "explained to Callanan [in an email] that he had more than ample training, education and experience for the position."   (Dkt. No. 30, at 24.) Defendant Callanan's email of September 25, 2019, in addition to containing the relevant statement about Plaintiff's age, was literally a request for guidance from a supervisor regarding why Plaintiff's training and experience did not render him qualified to be considered (given that he had not apparently completed a fellowship).   (Dkt. No. 29, Attach. 8, at ¶10; Dkt. No. 30, Attach. 1, at 285-88, 313.)   Further, there is no admissible record evidence from which a rational fact-finder could conclude that an individual such as Mr. Lawrence, the CEO of Defendant AMOC, *lacked* the authority to override any initial determination by Defendant Callanan that Plaintiff was not qualified for the position; indeed, to the contrary, part of the email chain that Plaintiff sent to Mr. Lawrence included Plaintiff's explanation of why his credentials make him

qualified, and Mr. Lawrence stated that he wanted to schedule an interview with Plaintiff "so that we may further evaluate your credentials and experience."   (Dkt. No. 29, Attach. 4.)   Simply stated, the fact that Defendant Callanan was uncertain whether Plaintiff's credentials were sufficient does not raise a reasonable inference of discrimination as to the ultimate alleged failure to hire him.

For all of the above reasons, no reasonable factfinder could conclude either that Plaintiff suffered an adverse action or that the evidence presented raises a reasonable inference of age discrimination in the failure to hire Plaintiff.   Because Plaintiff cannot establish a prima facie case of age discrimination under the ADEA, Defendants' motion for summary judgment on that claim is granted.

**B.    Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim Pursuant to the NYSHRL**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.   *See, supra* Parts I.D.1 and 3.   To those reasons, the Court adds the following analysis.

The standard for assessing age discrimination claims under the NYSHRL is the same as under the ADEA.   *Downey v. Monro, Inc.*, 20-CV-1505, 2022 WL 17093421, at *8 (N.D.N.Y. Nov. 21, 2022) (McAvoy, J.) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 [2d Cir. 2006]; *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 [2d Cir. 1997]).   As a result, Plaintiff's age discrimination claim under the NYSHRL also must be dismissed due to the failure to establish a prima facie case for the reasons discussed above.

Plaintiff raises arguments specifically related to Defendant Callanan that require a few additional words.   Plaintiff's first argument, that the Court may find that Defendant Callanan is

32

individually liable under the NYSHRL as an aider-abettor where the employer Defendants are

liable for discrimination, is unpersuasive because the Court has explicitly found that Plaintiff has

failed to establish a prima facie case of age discrimination against those employer Defendants.

(Dkt. No. 30 at 28.)   Because there is no direct liability by the employer Defendants, there was

no conduct by those Defendants that Defendant Callanan could be said to have aided or abetted.

Plaintiff next argues that he can maintain a valid claim against Defendant Callanan

individually under the NYSHRL regardless of whether he can do so against the employer

Defendants, relying on *Johnson v. County of Nassau*, 82 F. Supp. 3d 533 (E.D.N.Y. 2015).

(Dkt. No. 30, at 28-29.)   Granted, it is true that *Johnson* indicates that "the fact that plaintiff is

procedurally barred from proceeding against the employer does not prevent him from proving, in

connection with the lawsuit against an individual employee, that (1) the employer condoned or

approved the discriminatory conduct by the employee, and (2) the employee is liable under

Section 296(6) for aiding and abetting the employer's violation"; however, this does not help

Plaintiff here for two reasons.   *Johnson*, 82 F. Supp. 3d at 536.

First, Plaintiff is not procedurally barred from proceeding against the employer

Defendants in this case, and therefore the point of law set forth in *Johnson* is inapplicable; the

court in *Johnson* specifically distinguished certain cases cited based on the fact that the claims

against the employers in those cases were dismissed based on substantive, rather than procedural

grounds.   *Johnson*, 82 F. Supp. 3d at 538.   As was discussed above, the claims against the

employer Defendants here have been dismissed because Plaintiff has failed to establish a prima

facie case of age discrimination, not because of any procedural bar.

Second, even if such distinction were immaterial, Plaintiff still cannot surmount the

33

hurdle of showing that the employer Defendants "condoned or approved the discriminatory conduct."   It is undisputed that, upon being informed of Defendant Callanan's statement in the email of September 25, 2019, Mr. Lawrence removed Defendant Callanan from Plaintiff's application, assured Plaintiff he would be considered fairly, assigned a new recruiter to his application, and offered him an interview for the sleep physician position.   Again, there has been no evidence presented that Mr. Lawrence or any of the other individuals who were to be involved in Plaintiff's interview harbored any age-related discriminatory animus.   Further, Defendant Callanan was provided a verbal reprimand regarding the need to give all job candidates equal opportunity without regard to age or other personal characteristics, as well as a written warning.   (Dkt. No. 29, Attach. 8, at ¶ 14; Dkt. No. 30, Attach. 1, at 315-16.)   Although it is true that the notice of discipline submitted states only that Defendant Callanan needed to "double check emails prior to sending," this does not suggest that the employer Defendants condoned or approved of her conduct; all of the evidence makes it clear that they did not. Simply stated, because Plaintiff is still required to prove the employer Defendants expressed some measure of acquiescence or approval under this theory, and because he cannot do so under the evidence presented, his individual claim against Defendant Callanan pursuant to the NYSHRL must also be dismissed.   *See Johnson*, 82 F. Supp. 3d at 537-38 (emphasizing that, even in the absence of an employer as a party to the suit, a plaintiff must still prove the liability of that employer as part of its Section 296[6] claim against an individual employee).

Finally, in the alternative, the Court agrees with Defendants that, even if a factual and/or legal issue remained regarding Plaintiff's NYSHRL claim against Defendant Callanan (which it does not), the Court would (at the very least) decline to exercise supplemental jurisdiction over

that state law claim.

　　For the above reasons, the Court also grants summary judgment to Defendants on Plaintiff's age discrimination claim pursuant to the NYSHRL.

　　**ACCORDINGLY**, it is

　　**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 29) is

**<u>GRANTED</u>**; and it is further

　　**ORDERED** that Plaintiff's Complaint (Dkt. No. 2) is **<u>DISMISSED</u>**.

Dated: February 1, 2024
　　　Syracuse, New York


Glenn T. Suddaby
U.S. District Judge

35